## CHAMBERS v. BOOKMAN.

1. A mortgage is binding upon a married woman where it was executed by her prior to the General Statutes of 1882, whereby her right to contract was limited to such contracts as related to her separate estate.
2. Findings of fact by the Circuit Judge from written testimony sustained in part and in part reversed.
3. Where a bond executed after 1882 shows upon its face that it is the debt of the husband to secure advances, and the supplies advanced are charged to him, the bond being also signed by the wife and a mortgage of her separate estate to secure it being given by her, but no testimony furnished by the mortgagee to show that the advances were for her use, or for the use of any property of hers then operated by herself or by her agent, the mortgage is not binding upon the wife's separate estate.
4. Where a married woman borrows money herself, alleging that it is for the purpose of freeing her plantation from debt, and her husband receives the money as her agent, her contract of repayment is binding upon her, no matter what disposition was made of the money, if the lender had no reason to suspect an application other than for the uses of her separate estate.

Before FRASER, J., Fairfield, February, 1889.

Action by Mary A. Chambers against Mary A. Bookman and others. The referee, to whom it was referred to take the testimony and report the same, together with the amounts due, made no findings of fact. The Circuit decree was as follows:

The referee has made a report of the testimony taken by him and the amount and relative priorities of all the claims. The case comes up for a hearing on the testimony thus reported and

otherwise admitted by counsel, and exceptions as to the amount of Mrs. Caldwell's claims.

As to the claims of Mrs. Caldwell, the referee seems to have calculated the interest on this claim at 10 per cent. per annum in pursuance of a written agreement made by the defendant, Mrs. Bookman, to pay interest at that rate on the whole amount of the debt, interests and costs, at the date of the agreement, which was some time subsequent to the rendition of the judgment, the lien of which is set up in this case, being a judgment rendered in an action to foreclose a mortgage. The interest should have been calculated on the judgment, and not according to the terms of the agreement. Judgments bear interest at 7 per cent. on the debt, and not on costs or interests. The correct amount, therefore, is $1,153.41, and not $1,324.60, as stated in the report.

| | |
|---|---:|
| First. Mary S. Caldwell, | $1,153 40 |
| Second. Mary A. Holmes, | 2,783 11 |
| Third. James A. Brice, assignee, | 733 63 |
| Fourth. Mary A. Chambers, | 3,447 13 |

The principal matter of dispute in this case is as to the liability of Mrs. Bookman on her bond and mortgage held by plaintiff, Mrs. Chambers. It is claimed by Mrs. Bookman that they were executed by her while she was a married woman, and that they are not "contracts as to her separate estate," and that they are therefore invalid. It is claimed by counsel for Mrs. Chambers that the money which was borrowed from Mrs. Holmes, and for which this bond and mortgage was given, was borrowed and used, at least the greater part of it, to pay off and remove liens then existing over the estate of Mrs. Bookman. To understand clearly the testimony on this subject would require a knowledge of outside facts, perhaps well known to counsel, but of which there is no testimony. I am satisfied from the testimony that Mrs. Bookman had, as one of her inducements to borrow this money, that "her plantation would be free from all debt." It is nothing to the purpose that Mrs. Bookman "does not know of any benefit given to her separate estate" by borrowing the money, as it is no part of the duty of those who lend money to married

women to look after the expenditure of it, or to inquire into the validity of their title to the property upon which they hold out that they propose to expend it.

In the view I take of this case, I do not know that it is important to determine what was the purpose for which this money was borrowed or how it was expended. I am satisfied from the testimony that Mrs. Bookman borrowed this money herself, and that her husband acted, so far as he had anything to do with it, simply as her agent or attorney, as he professed to act when giving directions to Mr. Arthur, the agent of Mrs. Holmes, as to sending a check for the money, when the bond and mortgage was received, in which Mr. Arthur was directed to send check for at least part of the money, "payable to A. G. Bookman, attorney for M. A. Bookman." The bond and mortgage was signed by Mrs. Bookman alone, and he did not assume, or profess to assume, any personal liability in the matter.

In the case of *Fant* v. *Brown* (29 S. C., 598), a married woman had purchased a pair of mules, gave her note for the purchase money, with a mortgage of the mules, and *also* of a tract of land to secure it. On appeal the Supreme Court held that the mortgage of the land was valid, as well as those of the mules. In *Greig* v. *Smith* (29 S. C., 426), the bond and mortgage was given by a married woman "for the purpose of securing advances to me through my husband, W. G. Smith, and in his own name." The money was advanced and was applied by the husband "to the payment of his own indebtedness." On appeal this bond and mortgage was sustained. A married woman has a right (Gen. Stat., § 2037) "to purchase any species of property," and the conclusion I draw from the above cases is, that she has the right to secure the payment of the purchase price by her note or bond and mortgage. Upon the purchase of a mule or a plantation the property so purchased becomes "her separate estate." I see no reason why money—a species of property—cannot in the same way be purchased, or (as the term seems in these cases to have been changed) borrowed, the equivalent only to be returned to the lender. I therefore hold this bond and mortgage to be valid and binding on Mrs. Bookman.

It is therefore ordered and adjudged, that the mortgaged prem-

ises described in the complaint. or so much thereof as may be sufficient to pay the debts, interest, and costs, hereinafter provided for, be sold on salesday in November next, &c.   *   *   *

It is ordered, that the sheriff, out of the proceeds of sale, do pay, first, the costs and expenses of the sale, including his commissions in the sale, and any liens for taxes existing at the time of sale; and that he do then pay out the balance of proceeds of sale in the following order:

1. The costs of the referee and the officers of the court.

2. To Mary S. Caldwell her costs and the sum of eleven hundred and fifty-three and 40-100 dollars, with interest from 28th of September, 1888, the date of referee's report on the claims.

3. To Mary A. Holmes her costs and the sum of twenty-seven hundred and eighty-three and 11-100 dollars, with interest from the 28th of September, 1888.

4. To James A. Brice, assignee, seven hundred and thirty-three and 63-100 dollars, with interest from the 28th September, 1888, and his costs.

5. To plaintiff, Mary A. Chambers, her costs and the sum of three thousand four hundred and forty-seven and 13-100 dollars, &c.

The defendant, Mary A. Bookman, appealed upon three grounds, alleging error in holding her, a married woman, liable on the bonds and mortgages to (1) Smythe & Adger, (2) Mrs. Holmes, and (3) Mrs. Chambers.

*Messrs. O. W. Buchanan* and *Chas. A. Douglass*, for appellant.

*Messrs. Lyles & Haynsworth*, for plaintiff and Mrs. Holmes.

April 9, 1890.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   This was an action to foreclose a mortgage on real estate, to which other persons holding senior liens were made parties.   The only controversy presented by this appeal is as to the validity of three of the mortgages, which are assailed by appellant upon the ground that she was a married

woman at the time they were executed, and as such had no power to execute such mortgages. Taking these three mortgages in the order of their dates, they are as follows :

1. A mortgage, bearing date the ___ day of March, 1882, from Mary A. Bookman to Mary A. Holmes, to secure the payment of a bond to her of even date, the condition of which was nineteen hundred and twelve 77–100 dollars, payable in four instalments, the three first being $500 each, and the fourth being $412.77 ; first instalment being payable on 1st January, 1883, and the others on each succeeding January, with interest payable annually.

2. A mortgage of M. A. Bookman to Smythe & Adger, bearing date 4th March, 1883, to secure the payment of the joint bond of A. G. Bookman (appellant's husband), appellant herself, and Mary A. Holmes, bearing even date with the mortgage, in the penal sum of twelve hundred dollars, the condition being that said A. G. Bookman should pay by a time specified to said Smythe & Adger, "all such sums as he may owe them for money lent and supplies furnished during the present year, or on any other account whatever as the same shall be charged against him in the books of the said Smythe & Adger, with interest," &c. The account of advances under this bond were charged on the books against A. G. Bookman alone. On the same day an agreement in writing was entered into by Smythe & Adger, of the first part, with A. G. Bookman and Mary A. Bookman, of the second part, whereby the parties of the first part agreed to advance to the parties of the second part either in money or supplies, to an amount not exceeding $600, in consideration whereof the parties of the second part agreed to ship to the parties of the first part, by a time specified, all their cotton, pledging at least forty bales. This bond and mortgage has passed by assignment to the defendant, James A. Brice.

3. A mortgage of M. A. Bookman to Edward R. Arthur, attorney, bearing date the 5th January, 1884, to secure the payment of appellant's bond, of even date, in the penal sum of five thousand dollars, conditioned for the payment of twenty-five hundred dollars, in certain instalments and at certain times therein specified. This bond and mortgage was given for money bor-

rowed from Mary A. Holmes, and though made payable to Arthur, as her attorney, was really intended for her benefit, and was accordingly by him transferred to her, and by her assigned to the plaintiff herein.

As to the first mortgage, it is very clear that the defence set up cannot be sustained, for it bears date prior to the amendment of the law limiting the right of a married woman to contract. It is insisted, however, by appellant that though such is the fact, yet as the bond was given to indemnify M. A. Holmes against any liability which she might incur as surety for the appellant, and as the notes upon which M. A. Holmes did afterwards incur liability for appellant were executed after the amendment of the married woman law; and were not contracts such as appellant then had the power to make, she cannot now be made liable on said bond and mortgage. Assuming, for the purposes of this inquiry only, that the legal position upon which the appellant rests her defence is correct, the question of fact would still remain, whether the bond and mortgage was executed for the purpose of indemnity only. Now, it is quite certain that no such fact is found by the Circuit Judge, but, on the contrary, he must have found the reverse to be the fact, for he sustained this mortgage. And as there was quite sufficient evidence to sustain such finding, we certainly will not disturb it. The terms of the bond itself would go very far towards negativing the idea that it was intended for indemnity only, and this, with the other evidence on this point, would be sufficient to rebut the testimony on the part of appellant tending to show that the bond was given merely for indemnity.

As to the second mortgage stated above, there is more difficulty. The papers on their face show that it was given to secure a debt of the husband, rather than a debt of the wife, and it was incumbent on the holder of this mortgage to show affirmatively that the debt which this mortgage was given to secure arose out of a contract which a married woman was competent to make, and this, we think, has not been done. It is true that there is some testimony tending to show that the supplies were furnished for the plantation of appellant, but there is no evidence that they were furnished at her request, or that the planting operations

were carried on by her either directly or through an agent. The testimony of A. G. Bookman is that he got the money—six hundred dollars—from Smythe & Adger, and with it bought supplies, some, but not all, of which were used on the plantation belonging to his wife. But he does not say that he was running the plantation as agent for his wife. The only other testimony upon that subject is that of Flenniken, to the effect that "the goods sold by witness to Bookman consisted of plantation goods and supplies." But he does not say whether they were bought for the use of appellant on her plantation, or for the Craig place which Bookman speaks of cultivating that year. Again, there is no evidence whatever as to what portions of the goods so purchased were for the plantation and what for family supplies.

As to the agreement between Smythe & Adger, of the one part, and Bookman and his wife, of the other part, whereby the former agreed to advance to the latter a sum not exceeding six hundred dollars, it is quite sufficient to say that the testimony shows that the advances were made to A. G. Bookman individually, and so charged on the books of Smythe and Adger, and there is no testimony tending to show that any advances were made to or for the use of the appellant. It seems to us that such loose testimony is entirely insufficient to fix a liability on the appellant on a bond which upon its face shows was given for a debt of the husband. It is true that the Circuit Judge sustained this mortgage also, but upon what ground we are not informed. There is no discussion of the subject in his decree, and nothing, in fact, said about it, except simply to put it down as one of the claims to be paid in the order of its rank. Even if we should assume that the Circuit Judge found as matter of fact that this debt was contracted for the benefit of appellant's separate estate, we would be compelled to say that such finding is so clearly against the evidence that we could not sustain it.

As to the third mortgage, now held by plaintiff as assignee of M. A. Holmes, we agree with the Circuit Judge that there is testimony sufficient to show that the defendant borrowed the money herself; all that her husband had to do with it being as agent for his wife, and that one of the inducements, and probably the main inducement, for defendant to borrow the money was

to free her plantation from debt. If this be so, then it is wholly immaterial to inquire what disposition was made of the money after it was borrowed, as there is not the slightest evidence that the lender knew or even had any reason to suspect that the money was borrowed for the use of the husband and not for the wife. On the contrary, the testimony is clear that a part of the money was applied to a judgment, which, whether it was in fact a lien on defendant's property, was so understood to be by the lender, and the balance was by special directions sent to A. G. Bookman, as attorney for appellant. This mortgage must therefore, under the principles established by many recent cases, be sustained as a valid claim against appellant.

The judgment of this court is, that the judgment of the Circuit Court be affirmed in all respects, except so far as it establishes the validity of the mortgage to Smythe & Adger, now held by James A. Brice, as assignee, in which respect it is reversed.